UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE TRUSTEES OF THE EIGHTH DISTRICT ELECTRICAL PENSION AND BENEFITS FUNDS,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK, a Delaware Corporation,<br><br>　　　　　　　　Defendant. | Case No. 1:13-cv-00117-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court are Plaintiff's ("Funds") motion for summary judgment (Dkt. 17), Defendant's ("Chase") motion to dismiss, (Dkt. 25), and proposed intervenor The Bank of Commerce's ("Bank") motion to intervene (Dkt. 23). The lawsuit arises from the alleged conversion of a check presented for deposit at Chase. The Funds seek damages for conversion of a check meant for indorsement of the Funds.

The matters have been fully briefed and the Court has determined oral argument would not assist the decision-making process. Dist. Idaho L. Rule 7.1. The Court will therefore decide the motions without a hearing. For the reasons explained, the Court will

**MEMORANDUM DECISION AND ORDER - 1**

grant the Funds' motion for summary judgment, deny Chase's motion to dismiss, and deny the Bank's motion to intervene.

# FACTS[1]

Portneuf Electric Inc. ("Portneuf"), an electrical contractor,[2] entered into a Collective Bargaining Agreement with the International Brotherhood of Electrical Workers Local Union 449. As a result, Portneuf agreed to the terms and conditions of the Trust Agreements of the Plaintiff Benefit Trust Funds. The Agreement required Portneuf to contribute to the Funds for the benefit of its workers.

In 2010, Portneuf became delinquent on its obligations to the Funds, and later filed for bankruptcy under Chapter 11 of the Bankruptcy Code on September 9, 2011.[3] Schedule B identified accounts receivables of $1,205,490.00, and personal property and equipment with an aggregate value of $481,012.63. The bankruptcy schedules indicated the Bank held a secured claim in Portneuf's accounts receivables, vehicles, and equipment, while the Funds held a $525,000.00 unsecured nonpriority claim. The Bank filed a proof of claim on September 26, 2011, in the amount of $2,343,907.17, claiming a secured claim in Portneuf's inventory, equipment, and accounts receivables. On October 18, 2011, Portneuf moved to dismiss its Chapter 11 case. The reason Portneuf provided in

---

[1] The Court finds the following facts material and undisputed or, when disputed, taken in the light most favorable to Chase, the Defendant and non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing the district court's obligation to construe the record in the light most favorable to the non-moving party on motion for summary judgment). Chase did not file a separate statement of disputed facts or otherwise dispute the facts set forth in the Funds' Motion. Rather, Chase presented additional facts in support of its response.

[2] Brett Harris and Terri Harris were the owners and principal shareholders and officers of Portneuf.

[3] In addition to the bankruptcy pleadings attached to the Affidavit of Jon Stenquist, (Dkt. 20-1), the Court takes judicial notice of the pleadings in Bankr. Case No. 11-41502-JDP, *In re Portneuf Electric, Inc.*, filed on September 9, 2011, in the United States District Court for the District of Idaho. Fed. R. Evid. 201.

**MEMORANDUM DECISION AND ORDER - 2**

support of its motion was that it would be unable to formulate a Chapter 11 Plan, and it could no longer operate given its accounts receivables were owed to materialmen and suppliers who had filed claims and liens on its projects. Further, Portneuf could not liquidate given the Bank's secured claim in all of its equipment, thus leaving nothing for unsecured creditors. The bankruptcy court granted the motion on December 1, 2011, and Portneuf's bankruptcy case was closed on December 29, 2011.

In June of 2012, the Funds negotiated the issuance of a check from Battelle Energy payable jointly to Porneuf and the Funds for maintenance work performed by Portneuf for the Idaho National Laboratories. In exchange for the check, the Funds waived any right to pursue liens on Battelle Energy's real property.

On June 29, 2012, Battelle Energy issued Check No. 0864149 in the amount of $75,636.74 drawn on its account with U.S. Bank and made payable to "PORTNEUF ELEC & EIGHTH DISTRICT ELECT PENSION AND BENEFITS F". Hall Decl. ¶ 10 Ex. 2 (Dkt. 17-5.) The check was mailed to Portneuf. Battelle Energy intended that the Check was payable jointly to Portneuf Electric, Inc. and the Eighth District Electrical Pension and Benefits Fund. The parties to the agreement---Battelle Energy, the Funds, and Portneuf---intended for the amount to be paid to the Funds as payment for Portneuf's delinquent employee pension contributions.

On or before July 15, 2012, Portneuf tendered the Check at Chase and the proceeds of the Check were deposited into Portneuf's account at Chase. The rubber stamp indorsement on the back of the check noted "FOR DEPOSIT ONLY PORTNEUF

**MEMORANDUM DECISION AND ORDER - 3**

ELECTRICAL INC.," and designated an account number. The Funds did not indorse the check, and did not receive any benefit from the Check.

The Funds filed a one count complaint for damages against Chase for conversion under Article 3 of the Uniform Commercial Code, Idaho Code § 28-3-420, in the amount of the check plus interest. The Funds argue that summary judgment is appropriate, because it was clear from the ampersand sign that the check was payable to two joint payees, and Chase wrongfully negotiated the check without the required two party indorsement. By accepting the check for deposit into Portneuf's account without the required indorsements from both payees, the Funds argue Chase is liable for damages.

Chase first asserts that the payee name on the face of the Check was ambiguous, because a bank employee reviewing the Check would not know that Battelle Energy intended the Check to be jointly negotiated by Portneuf and the Funds. Chase argues that the Check appears to name one payee with a compound name. Accordingly, Chase argues it is not liable to the Funds for paying the Check to Portneuf, because the ambiguity in the name could have been avoided had Battelle provided the full names of the alleged payees.

Second, Chase contends that its deposit agreement with Portneuf insulates it from liability. Chase argues its deposit agreement with Portneuf contains a disclaimer that it has no duty to prevent a check from being deposited that may have missing or erroneous information. Chase accepted the Check via remote online deposit, which it explains is highly automated, and that it pays millions of checks every day. Accordingly, Chase argues that reasonable commercial standards do not require Chase or other deposit

**MEMORANDUM DECISION AND ORDER - 4**

institutions to verify the accuracy of any particular check at the time of deposit. *See* Aff. of Stenquist Ex. 1 (Dkt. 20.) Chase's procedures for processing checks, including those remotely deposited, is to inspect some, but not all, of the checks.

Finally, Chase contends that Portneuf and the Bank are necessary parties to the proceeding and that joinder is required because they may claim the proceeds of the Check. The Bank has moved to intervene, and alternatively, Chase has moved to dismiss for failing to join indispensable parties.

## ANALYSIS

1. **Summary Judgment Motion**

    A. *Summary Judgment Standard*

    Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence in a light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A key purpose of summary judgment is to "isolate and dispose of factually unsupported claims ...." *Celotex Corp.*, 477 U.S. at 323–24. It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

**MEMORANDUM DECISION AND ORDER - 5**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 256–57. The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and the weight to be accorded particular evidence, and must view the facts in the light most favorable to the nonmoving party. *Kaelin v. Globe Communic'ns Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998).

The party bearing the burden of proof at trial "must establish beyond controversy every essential element of its ... claim." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) (adopting decision of district court "as our own"). A party who does not have the burden "may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Fed. R. Civ. P. 56(c)(1)(B) (advisory committee's note). As a general rule, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. Cal. Gas Co.*, 336 F.3d at 889).

**MEMORANDUM DECISION AND ORDER - 6**

B. *Conversion Under Article 3 of the Commercial Code*

The Funds argue summary judgment is appropriate on its conversion claim because there is no dispute Chase ignored the two party payee designation on the face of the Check, and Chase accepted a check for deposit without the necessary indorsements. The Idaho Commercial Code indicates to whom an instrument is payable. Under Idaho Code § 28-3-110:

> The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person.
>
> \*\*\*
> If an instrument is payable to two (2) or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two (2) or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two (2) or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

Idaho Code § 28-3-110(1), (4).

An instrument is converted if it is taken by transfer from a person not entitled to enforce the instrument, or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. Idaho

Code § 28-3-420(1). The measure of recovery is the amount payable on the instrument. Idaho Code § 28-3-420(2).[4]

There is no disputed issue of fact regarding Battelle's intent in issuing the Check. Battelle, and the other parties (the Funds and Portneuf), all intended that the Check be jointly payable to the Funds and Portneuf, with the Funds entitled to the proceeds. Chase argues, however, that the payee designation is ambiguous because there is no comma separating the two payees and there is no entity designation for Portneuf Electric, lending the impression that the "&" indicates a compound name or trade name.

Chase distinguishes *Redondo Constr. Corp.*, upon which the Funds rely, in which the check was made payable to the order of "Redondo Construction Corp., Summertime Developer Corp. & Lyon Builder." In that case, the court found the payee designation to three joint payees unambiguous,[5] because the three names were separated by a comma and the connector word symbol "&". *In re Redondo Constr. Corp.* (*Redondo Constr. Corp. v. Summertime Dev. Corp.*), 411 B.R. 114, 124 (Bankr. D. Puerto Rico 2009). The court concluded that the debtor, Redondo, had an action for conversion against the payor bank, because the payor bank negotiated the checks without all three required indorsements. *Id.* at 130-131.

---

[4] There is no dispute that the Funds are entitled to bring an action for conversion. Idaho Code § 28-3-420(1) states that an action for conversion may not be brought by a payee who did not receive delivery of the instrument. But delivery to one payee on a joint check is deemed to be delivery to all payees. Idaho Code § 28-3-420 Off. Cmt. § 1. *See also In re Redondo Constr. Corp.* (*Redondo Constr. Corp. v. Summertime Dev. Corp.*), 411 B.R. 114, 127 (Bankr. D. Puerto Rico 2009); *Bank of Am. Nat'l Trust & Sav. Assoc. v. Allstate Ins. Co.*, 29 F.Supp.2d 1129, 1142 (C. Dist. Cal. 1998) ("If a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees.").

[5] Whether an ambiguity exists is a question of law for the court. *U.S. v. Sacramento Mun. Util. Dist.*, 652 F.2d 1341, 1343-44 (9th Cir. 1981). *See also Bank of Am. Nat'l Trust & Sav. Assoc.*, 29 S.Supp.2d at 1139 (determining whether the draft of the check was ambiguous).

**MEMORANDUM DECISION AND ORDER - 8**

Although the Court finds the facts in *Redondo* distinguishable, it concludes the draft is not ambiguous. While there is no entity designation or comma after Portneuf's name, the "&" symbol and the designation of "Pension and Benefits" in the second payee name unambiguously identifies two joint payees. The ampersand symbol, or the word "and," is commonly understood to delineate two payees. *Lund v. Chem. Bank*, 797 F.Supp. 259, 266 (S.D.N.Y. 1992) ("It is commonly understood that one who makes a check payable to two individuals, their names joined by 'and,' [requires] the check [to] be signed by each."). This is not a case where there are no grammatical connectors whatsoever, which would likely require a finding of ambiguity. S*ee In re Ames Dept. Stores, Inc.*, 322 B.R. 238, 244 n.32 (Bankr. S.D.N.Y. 2005) (citing cases holding that, absent language or markings such as the word "and" or "or," a check was ambiguous and payable alternatively).[6] Further, the inclusion of "pension and benefits" in the payee line should have put Chase on notice that it was dealing with two payees, not one, and that Portneuf Electric, Inc., clearly a corporate entity, was not authorized to indorse or negotiate the check. *See Joffe v. United Cal. Bank*, 190 Cal.Rptr. 443, 458 (Cal. Ct. App. 1983) (check for a substantial amount payable to an escrow, trust, or similar entity, imposes duty upon depository bank to inquire further if a third party attempts to negotiate the check).[7]

---

[6] "Stacked" payees, listed with no grammatical connector, punctuation or symbol indicating their relationship, also indicate an intent to pay in the alternative. *Pelican Nat'l Bank v. Provident Bank of Maryland*, 849 A.2d 475, 483 (Md. 2004) (explaining the change in UCC § 3-110(d), codified at Idaho Code § 28-3-110(4), presuming that where an ambiguity exists the instrument is payable to persons alternatively).

[7] In *Joffee*, the court held that a check payable to "Continental Financial Systems---Wells Fargo Escrow Trust Account" but endorsed only by Continental Financial Systems, put the bank on notice that Continental, who was not the designated payee, could not negotiate the check. 190 Cal.Rptr. at 458.

**MEMORANDUM DECISION AND ORDER - 9**

If the Court accepts Chase's alternative assertion that the payee line identifies one entity, Chase's argument similarly fails. Chase contends that the ambiguously drawn Check was payable to a single entity requiring only a single indorsement. But if Chase's premise is accepted, the indorsement on the back does not match the payee name. Chase therefore accepted a check for deposit made payable, according to its argument, to an entity other than the payee name on the Check.

This not a case where the name of the payee and the name on the indorsement are similar, such as a payee named 29th Street Company endorsed by 29th Street Corp. *See Nat'l Title Ins. of New York, Inc. v. Spectrum Settlement Group, Inc.*, No. 6611-2004, 2006 WL 3361550 at *2 (N.Y. Sup. Ct. 2006) (commenting that the bank would be entitled to accept a check for payment under those circumstances). Under Idaho Code § 28-3-405(3), a bank is relieved of liability for accepting deposits in the wrong account if the name of the payee is "substantially similar" to the name of the indorser.

Here, in contrast, the name of the payee and the name of the entity that owned the account and indorsed the check are not substantially similar. "Portneuf Elec[tric] & Eighth District Elect[rical] Pension and Benefits F" cannot be characterized as "substantially similar" to "Portneuf Electric Inc." Chase even pointed out there was no entity designation in the payee line, yet there was on the indorsement line. Further, "a bank is required to know that a pension plan is a different entity," and if the word "pension" appears in the name of a payee, that name cannot be considered substantially similar to a name lacking those words. *In re McMullen Oil Co.* (*McMullen Oil Co. v. Crysen Refining, Inc.*), 251 B.R. 558, 576 (Bankr. C.D. Cal. 2000) (finding bank liable

when the payee on the checks, identified as "McMullen Oil Co. Pension Plan," was not substantially similar to the indorser, "McMullen Oil Co."). The same can be said of a trust. *See Joffee*, 190 Cal. Rptr. at 458.

When presented with a payee name vastly different than the indorser, Chase was or should have been on notice that acceptance of the check was improper. *Nat'l Title Ins. of New York, Inc.*, 2006 WL 3361550 *2 (finding liability of the bank clear when the check was made payable to another entity other than the entity that owned the account). *See also The Guardian Life Ins. Co. of Am. v. Weisman*, No. 96-CV-1141, 1999 WL 33486068 (D. N.J. 1999) ("it is incumbent upon a drawee (or payor) bank to 'ascertain the identity of the payee.'"). As far back as 1913, the United States Court of Appeals for the Ninth Circuit held that a payor bank, such as Chase, has a duty to ascertain whether there was such a person as the payee named in the check, and to know that the person who presented the check was entitled to receive payment. *United States v. Nat'l Bank of Commerce of Seattle, Wash.*, 205 F.433, 438 (9th Cir. 1913).

Even with the advent of automated banking, computers, and electronic check processing, the rule requiring payor banks to verify the identity of the payee has not changed. Chase argues it is absolved from liability because it employed commercially reasonable standards and Battelle could have avoided the ambiguity in the payee names by denoting Portneuf as an entity with the designation "Inc." before the "&" symbol. Chase cites Idaho Code § 28-3-103(g), the definition of "ordinary care," in its defense. "Ordinary care" in the case of a bank

> that takes an instrument for processing for collection or payment by
> automated means, reasonable commercial standards do not require the bank
> to examine the instrument if the failure to examine does not violate the
> bank's prescribed procedures and the bank's procedures do not vary
> unreasonably from general banking usage not disapproved by this chapter
> or chapter 4 [, title 28, Idaho Code].

Idaho Code § 28-3-103(g).

Chase's argument fails for two reasons. First, Chase has not identified any "prescribed procedures" other than, because it pays millions of checks every day, it only inspects some checks, and commercially reasonable standards do not require it to do more. But Chase has not identified any procedure, standard, or method to detect unauthorized payees other than a vague reference to "random sampling" of checks. Chase has utterly failed in coming forward with testimony, a bank manual,[8] or other evidence of its internal "standards." *See, e.g., Swiss Baco Skyline Logging, Inc. v. Haliewicz*, 567 P.2d 1141, 1148 (Wash. Ct. App. 1977) (holding bank did not act in accordance with reasonable commercial standards in accepting a check because there was no evidence to indicate the bank made any inquiry regarding the authority of the indorser, contrary to the bank's procedural manual). Chase has a duty to make payment only to the payee named in the check and has a duty to determine the identity of the payee. *Hanover Ins. Co. v. Brotherhood State Bank*, 482 F.Supp. 501, 505-506 (D. Kan. 1979). *See also Nat'l Bank of Commerce of Seattle, Wash.*, 205 F. at 438.

Although *Hanover Ins. Co.* was decided before the age of computerized banking, the argument that a bank could not possibly be expected to inspect checks was raised and

---

[8] The only evidence Chase presented was its deposit agreement with Portneuf, which would not apply to bind anyone other than Portneuf.

**MEMORANDUM DECISION AND ORDER - 12**

rejected there. The bank argued its tellers did not have time to accurately check signatures or payees, similar to Chase's argument here that, because it processes millions of checks, it cannot be expected to examine them. The bank in *Hanover* argued that local banking standards simply did not require it to examine checks.

But the *Hanover* court held that, even assuming local banking standards did not require the bank to examine checks, the banking industry could not be permitted to set its own uncontrolled standard or amend the standard of ordinary care. 482 F.Supp. at 506. In other words, the bank's standard in *Hanover* was no standard at all. *Hanover* commented that "the discovery of such alterations does not require a sophisticated detection scheme. The substantial amounts of the checks involved in this case and the ease with which a telephone call could have confirmed the payee are factors that further support the plaintiff's showing of a lack of ordinary care." 482 F.Supp. at 505-06. One would think that, in today's era of sophisticated software, machines and computers, banks could easily develop automated methods to examine checks and ensure payee names match the indorsement.

Further, courts have consistently found the failure of a bank to inquire about a missing or incorrect indorsement to violate reasonable commercial standards as a matter of law. *Cont'l Cas. Co. v. Fifth/Third Bank*, 418 F.Supp.2d 965, 978 (N.D. Ohio 2006) ("Examples of practices involving 'clearly unreasonable conduct on the part of [a] bank' include: 'payment of checks with missing [endorsements], failure to respect restrictive [endorsements], failure to inquire into the authority to sign of one purporting to be an

agent, and allowing deposit of a check indorsed by a corporate payee into a personal account.'").

The second reason Chase's argument fails is because it improperly invokes Idaho Code 28-3-103(g) as an affirmative defense. Section 103(g) contains only the definition of "ordinary care." In other words, the definition section does not provide an affirmative defense to the Funds' claim for conversion. Rather, Idaho Code § 28-3-406 defines the affirmative defense incorporating the concept of ordinary care. *See John Hancock Fin. Servs., Inc. v. Old Kent Bank*, 185 F.Supp.2d 771, 776 (E.D. Mich. 2002) (explaining the preclusion defense under Michigan's equivalent to Idaho Code § 28-3-406).

Under § 406, "[a] person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument ...." *Id*. at 406(1).[9] Further, "if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss." *Id*. at 406(2).

---

[9] Prior to the 1993 amendment, this provision stated:

> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

**MEMORANDUM DECISION AND ORDER - 14**

The burden of proof shifts depending upon which subsection of Idaho's UCC provision is asserted. Under subsection (1), the burden of proving that a failure to exercise ordinary care contributed to an alteration of an instrument or to the making of a forged signature on an instrument is on the person asserting the preclusion, in this case, Chase. *Id*. at 406(3). Under subsection (2), the burden of proving that a failure to exercise ordinary care in paying or taking an instrument substantially contributed to loss is on the person precluded. *Id*.

Here, it appears Chase seeks to assert preclusion against the Funds,[10] contending that if Battelle had been more careful in writing the payee name, a reviewer[11] would have treated the payee as a joint payee. *See* Response at 2 (Dkt. 20.) But there are two statutory flaws with Chase's argument. First, Chase is asserting preclusion against the Funds, whose conduct did not contribute to the alleged ambiguity in the payee name. Section 406, by its terms, does not apply, because Chase is not asserting the defense against Battelle, the entity allegedly failing to exercise ordinary care.

Second, Section 406 has been found by courts not to apply in situations involving missing or improper indorsements such as this case. *See Cont'l Cas. Co.*, 418 F.Supp.2d at 978 (explaining Section 406 is not an available defense for checks with missing or illegible indorsements, only for "forged" endorsements); *John Hancock*, 185 F.Supp.2d at 776-77 (explaining that Section 406 applies only to forged signatures and altered

---

[10] Chase did not specifically cite to Idaho Code § 28-3-406. However, because Section 406 is the only affirmative defense that appears to fit Chase's assertion, the Court considered it.

[11] Interestingly, Chase gave the example that a bank employee reviewing the Check would not know it designated two payees. Yet, Chase argued that its standards do not require review of checks. Further, if a bank employee had reviewed the check, it would be obvious, as explained above, that the indorsement does not come close to matching the name of the payee.

**MEMORANDUM DECISION AND ORDER - 15**

instruments, not to every act of conversion included in Section 420, such as conversion by means of an unauthorized signature). Therefore, Chase cannot invoke the defense found in Idaho Code § 28-3-406.

2. **Motion to Dismiss and Motion to Intervene**

Contrary to Chase's assertion and those made in the motions filed, the Bank is not an indispensable party whose joinder requires dismissal of this matter, nor is the Bank's intervention required.

    A.    *The Bank's Motion to Intervene*

The Bank claims a right to intervene under Fed. R. Civ. P. 24(a)(2) or permissively under Fed. R. Civ. P. 24(b) because, as a secured creditor of Portneuf, it holds a security interest in Portneuf's accounts receivables, and the Check represents an account receivable. The damages the Funds seek for conversion of the Check against Chase is not an account receivable. An account is a "right to payment of a monetary obligation…the term does not include commercial tort claims…" Idaho Code § 28-9-102(a)(2). Not only does the definition of an account receivable expressly exclude tort damages for conversion, the Check, and the proceeds from the check, are gone as of July 15, 2012, when the proceeds of the Check were deposited into Portneuf's account. The account receivable existed at the time Battelle owed Portneuf money for services rendered. Portneuf received the money, and the Bank made no claim to it at the time it was paid.

The Bank has no right or interest in the damages sought by the Funds for conversion of the check by Chase. The motion to intervene will be denied.

**MEMORANDUM DECISION AND ORDER - 16**

**B.**  *Chase's Motion to Dismiss*

Alternatively, Chase argues this matter should be dismissed for failure to join an indispensable party (the Bank) under Fed. R. Civ. P. 19. The Rule requires joinder of a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Neither provision of Rule 19 applies here.

First, the Court can accord complete relief among Chase and the Funds. The Funds seek a money judgment against Chase for damages for conversion. The Court can and has adjudicated that issue. Second, as explained above, the Bank has no interest in the damage claim. Its security interest was in Portneuf's accounts receivables, which Portneuf received. Finally, the Bank has not asserted (nor can it assert) a claim against Chase. There is therefore no risk of a double recovery against Chase. The motion will be denied.

## CONCLUSION

The Funds' motion for summary judgment will be granted with respect to its conversion claim. The other motions have no merit, and will be denied.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion for Summary Judgment (Dkt. 17) is **GRANTED**.

   Plaintiff is directed to prepare a form of Judgment for entry by the Court, and submit the same on or before **September 12, 2014**.

2) Defendant's Motion to Dismiss (Dkt. 25) is **DENIED**.

3) Bank of Commerce's Motion to Intervene (Dkt. 23) is **DENIED.**

Dated: **August 29, 2014**

Honorable Candy W. Dale
United States Magistrate Judge